### McCORMICK et al. v. RICKS.
No. 5887.

Court of Civil Appeals of Texas. Amarillo.
June 28, 1948.

Rehearing Denied Sept. 13, 1948.

LaFont & Tudor, of Plainview, for appellants.

Klett, Bean, Evans & Justice, of Lubbock, and L. A. Wicks, Sr., of Ralls, for appellee.

STOKES, Justice.

On December 27, 1946, appellant, Chesley C. McCormick, and his wife executed a general warranty deed conveying to his nine children, all of whom were adults,

Section 15 in Block J–D in Hale County containing 640 acres of land. The consideration provided in the deed was $100 cash, the love and affection of grantors for the grantees and the assumption by the latter of an indebtedness aggregating $9,600 secured by a lien upon the land. On July 19, 1947, the nine children of Chesley C. McCormick and the appellee, H. A. Ricks, entered into a contract of sale under which the nine children contracted and agreed to sell, and appellee agreed to purchase, the section of land for a consideration of $64,000 cash. Before conveying the land to his children, Chesley C. McCormick had rented it for the year 1947 to his brother, F. F. McCormick and William Mann, to be planted in wheat and cotton, the rental to be one-third of the wheat and one-fourth of the cotton produced thereon during the crop seasons of 1947, and the contract of sale between McCormick's children and appellee provided that appellee should receive all rentals from the cotton produced during that year. The contract of sale was closed and the children of Chesley C. McCormick executed deeds conveying the land to appellee on August 5, 1947, and on October 23 following, appellee, H. A. Ricks, filed this suit against appellant and the two tenants. The petition contained the formal allegations of a suit in trespass to try title and in addition it set up the purchase of the land by appellee and alleged that appellant was then claiming that he had reserved to himself all rentals produced from the crops during the year 1947, and that he was therefore entitled to collect them from the tenants. He further alleged that appellant had made demands upon the tenants for the rentals and that the tenants would pay the same to appellant unless all of them were restrained by injunction, for which he prayed. He also prayed for judgment against all of the defendants for the cotton rentals which he alleged amounted to $11,250.

Appellant answered by alleging that his conveyance of the land to his children was a gift by him and his wife to them and that, before the deed was delivered, he explained to them that he retained and reserved all rents from crops grown on the land during the year 1947, and that his children accepted the gift with that understanding and upon that condition. The deed did not contain any reservation of the rentals, but appellant alleged that prior to the time appellee purchased the land, he was fully advised and knew that appellant was asserting a claim to the landlord's share of the crops planted, grown and to be harvested thereon and that he purchased the land with full knowledge that appellant was entitled to collect such rentals.

A jury was impaneled to try the case but, at the close of the testimony, appellee presented a motion for an instructed verdict which was granted by the court and, upon the return of such verdict, judgment was rendered by the court in favor of appellee and against appellant and the tenants for all of the rentals from the cotton crops produced on the land during the year 1947.

It was shown by the testimony that prior to July 19, 1947, when the contract of sale was executed, a controversy had risen between appellant and his children concerning the wheat rental and on July 23, 1947, the children filed a suit against appellant in which they contended they were entitled to the wheat rentals. Appellee knew of the controversy between appellant and his children before he entered into the contract of sale, and he knew of the suit filed by them against appellant some twelve or thirteen days before he closed the deal, received his deed and paid to them the purchase price of the land. On July 20, 1947, the day after the contract of sale was executed, appellee went out to the farm and was giving some directions to the tenants concerning the crops and the fences when appellant appeared and informed appellee that he, appellant, was the landlord for the year 1947 and enjoined appellee not to bother his tenants. In that conversation he said to appellee, "I don't want you bothering my tenants or hurting this cotton crop. If you want anything done here, you come to me about it." In sustaining objections to this and other similar testimony the court held that appellee's knowledge of the controversy over the wheat rentals, acquired before he contracted to purchase the land, and his knowledge of the fact that the children had instituted

a suit against appellant for the rentals, acquired after appellee had contracted for the land, was not sufficient notice to require of him any further inquiries concerning appellant's claims that he owned the rents from the cotton crops. Appellee's objections to all of the testimony concerning those matters, including the conversation between appellant and appellee in which appellant told appellee that he, appellant, was the landlord for the year 1947 and that he did not want appellee to molest the crops or his tenants, were, therefore, sustained.

Appellant offered testimony to the affect that, upon the occasion of his gift of the land to his children and before the deed was delivered to them, he told them that the land was rented to tenants for the year 1947 and that the children would not have any jurisdiction over it until the year 1948, except that they may sell the land, but that he was reserving the rentals for that year, and that they accepted the deed with that understanding and agreement. The court sustained objections of appellee to this testimony and appellant duly excepted. The reason given by the court for sustaining the exceptions was that the controversy between McCormick and his children pertained to the wheat rentals and the fact that appellee knew there was a controversy between them concerning the wheat rentals was not sufficient to put appellee upon notice that appellant was claiming the rent from the cotton crops. Appellants' assignments of error challenge those rulings.

It has long been the law in this state that an owner of land may sell and convey the same and, by verbal agreement, reserve the rental thereafter to become due. Such a reservation effects, by mutual agreement, a segregation of the rentals from the land itself. It is in consonance with the well recognized rule that a chattel mortgage or sale of a growing crop can legally be consummated although it has not been severed from the soil. Bowyer v. Beardon, 116 Tex. 337, 291 S.W. 219; Zeigler v. Citizens' Bank, Tex.Civ.App., 79 S.W.2d 662. It is also a rule of long standing that the question of notice is a question of fact to be determined by the jury from all the facts and circumstances given in evidence pertaining to that subject. Any information which is sufficient to put a man of ordinary prudence upon inquiry will be regarded as notice to him and if, by such inquiry, he might ascertain the facts, he is required to pursue it with reasonable diligence. Sickles v. White, 66 Tex. 178, 17 S.W. 543. In Bowyer v. Beardon, supra, the Supreme Court held that if, even after the purchaser had received his deed to the land and had given the vendor a cheque for the cash payment, he received notice of the reservation of rents by a former owner before the cheque had been paid by the bank and in time to enable him to stop payment of it, he had actual notice of the verbal reservation and, by permitting his purchase to be consummated, he assented to the reservation and knew he was not to get the rentals from the crops.

The testimony was undisputed, even admitted by appellee, that on the 20th of July, 1947, the day after he contracted with McCormick's children to purchase the land, and twelve or thirteen days before it was conveyed to him and he paid the purchase price, he knew there was a controversy between appellant and his children in which they were both claiming the rents from the wheat grown on the land. Moreover, appellant, on that day, told him he, appellant, was the landlord for that year and he did not want appellee to bother his tenants or to "hurt" the cotton crop, and that if he wanted anything done on the farm, he should consult appellant about it. Appellee testified he made no further inquiries about the rents because he did not consider it material. He said the controversy over the wheat rents did not excite his suspicion as to the cotton rents and that he asked no one about it and made no effort to ascertain whether or not appellant was claiming, or was entitled to, or had reserved unto himself the rents on the cotton for the current year.

If appellant reserved the rents on both the wheat and the cotton when he conveyed the land to his children in December, 1946, and was entitled to them, we think the information furnished to appellee and the knowledge which he admits he had concerning such reservation and appellant's ownership of the rents was amply suf-

ficient to raise a question of fact as to whether or not a man of ordinary prudence and care would have instituted an inquiry and made an investigation of it. As was held by the Supreme Court in the case of Sickles v. White, supra, such question of fact was for the jury to determine and, in our opinion, the court erred in sustaining appellee's objections to the testimony and thus depriving appellant of the opportunity of proving the defenses alleged by him in his pleadings. O'Mahoney v. Flanagan, 34 Tex.Civ.App. 244, 78 S.W. 245; Wethered's Adm'r v. Boon, 17 Tex. 143; Luckel v. Bransdall Oil Co., Tex.Civ.App., 74 S.W. 2d 127; Haley v. Sabine Valley Timber & Lumber Co., Tex.Civ.App., 150 S.W. 596.

Appellee insists that there was no testimony to the affect that the cotton had been planted on the land prior to July 19, 1947, when he contracted to purchase it, nor that the cotton was growing thereon at that time, and therefore the rental from the cotton crop went with the land. It is true that, while a chattel mortgage, sale, or reservation of an interest in crops, made before the crops are planted, is valid, yet, if the land is sold to another before they are planted, such sale carries with it all interest in the crops that are thereafter planted on the land. Zeigler v. Citizens' Bank, Tex.Civ.App., 79 S.W.2d 662. This rule is not available to appellee however, because the witness, F. F. McCormick, testified that the growing crops on the land at the time appellee purchased it were wheat and cotton. He said the wheat had been harvested and there were no other crops on the land except wheat and cotton.

In our opinion the court erred in sustaining appellee's objections to the testimony offered by appellant concerning his reservation of the rentals and appellee's knowledge of it. They were questions of fact and should have been submitted to the jury. The judgment will therefore be reversed and the cause remanded.

## On motion for Rehearing.

PER CURIAM.

In his brief and again in his motion for rehearing, appellee contends that this court cannot consider actions and rulings of the court below on the admission and exclusion of evidence at the trial, nor any other alleged errors urged by appellants except those pertaining to the action of the court in giving to the jury a peremptory instruction to return a verdict against them, because they did not file and urge a motion for a new trial in the court below and therein assign such errors.

As we stated in the original opinion, a jury was empaneled to try the case but, at the close of the testimony, the court sustained a motion of the appellee for a peremptory instruction. Upon the return of the verdict the court entered judgment in favor of the appellee.

As we understand rules 324 and 374, T.R.C.P., and the decisions of the courts pertaining to them, appellants were not required to file a motion for a new trial nor to file assignments of error other than to assign the errors in points of error in their brief as provided by rule 374. The errors assigned were so included in the brief and we think they were sufficient to comply with the rules. Rule 324 provides that in all jury cases in which judgment is rendered five days or more before adjournment of the court, a motion for new trial shall be filed. It then provides that the object of the rule is to require a motion for new trial as a prerequisite to appeal in all cases unless a peremptory instruction is given. It seems clear, therefore, that, in a case such as this, where a peremptory instruction was given, the appellants were not required to file a motion for a new trial. Such a case is not considered by the rule to be a jury case and, in fact, it is not such a case because the jury is not permitted to pass upon the facts. Its prerogative of doing so is taken from it by the court and the case, to all intents and purposes, is a trial by the court the same as if no jury had been empaneled.

We find nothing in any of the rules which restricts an appellant to an assignment pertaining to the action of the court in giving a peremptory instruction in a case in which such an instruction is given and we know of no case in which they have received such an interpretation. On the

other hand, there are numerous cases in which the opposite was held. Bedner v. Federal Underwriters Exchange, Tex.Civ. App., 133 S.W.2d 214; Associated Indemnity Corporation v. Insurors Indemnity & Ins. Co., Tex.Civ.App., 153 S.W.2d 533; Woodmen of the World Life Ins. Soc. v. Brown, Tex.Civ.App., 164 S.W.2d 190; De-Busk v. Guffee, Tex.Civ.App., 171 S.W.2d 194; Aldridge v. General Mills, Inc., Tex. Civ.App., 188 S.W.2d 407.

Some of the cited cases were trials in which the judgments were entered less than five days before the adjournment of the court for the term. Appeals from such judgments are placed in the same category by rule 324 as cases in which peremptory instructions are given and the holdings were that motions for new trials were not necessary. In DeBusk v. Guffee, supra [171 S.W.2d 196], it was said: "In all cases, where no motion for new trial is required, and, therefore, none made, the Rules provide a substitute for assignments of error. Such substitute provision is a part of Rule No. 374, * * *." The part of the rule referred to is that portion which provides for the assignments of error to be presented by points of error in the brief.

The appellee further contends in his motion that we erred in holding that the evidence showed the crop of cotton was planted before he made and closed his contract of purchase of the land on August 5, 1947. F. F. McCormick testified that cotton was growing on the land the next day after appellee closed his transaction to purchase it. The question of whether or not the cotton had been planted before appellee purchased it seems not to have figured in the trial, but we think the testimony of F. F. McCormick is properly interpreted as meaning that, on August 6, 1947, the cotton was then up and in the process of growth. If so, it necessarily follows that it had been planted a substantial length of time prior to July 19, 1947, when appellee entered into the contract of purchase. Ed Allen, the real estate agent who sold the land to appellee, testified that he showed the land to appellee around the middle of July, 1947. He said the wheat had been harvested, but the cotton was there, growing, at that time. Moreover, all the testimony showed that an abundant crop of cotton was gathered during the harvesting season which followed and it is a matter of common knowledge that, in most sections of the state, particularly its western portion, cotton is planted during the months of May and June or early in July at the latest. It is well known also that if it is planted later, especially in the last days of July or in August, it will not have time to grow, develop and produce a normal crop before receiving its death blow by the winter's frosts. It is well established that courts will take judicial knowledge of such matters. Roberts v. Armstrong, Tex.Com. App., 231 S.W. 371; Matagorda Canal Co. v. Markham Irr. Co., Tex.Civ.App., 154 S.W. 1176; McCullough v. Rucker, 53 Tex. Civ.App. 89, 115 S.W. 323; Jordan v. Dinwiddie, Tex.Civ.App., 205 S.W. 862 (reversed on other grounds).

Appellee challenges our finding that, on the 20th of July, 1947, he was informed by the appellant that appellant was the landlord for the year 1947. A re-examination of the testimony discloses that appellee is correct in this contention. The conversation between the parties in which appellant made that assertion was had the day after appellee paid for the land and received his deed and we withdraw from the original opinion the finding that it was before that date. However, this change in our findings of the facts will not affect our disposition of the case, because, as shown by the original opinion, there was evidence of other conditions which raised issues that should have been submitted to the jury. The motion will, therefore, be overruled.